# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:16 cr 261 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| vs. | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| JESUS CRUZ, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is Jesus Cruz' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct the Sentence by a Person in Federal Custody. **Doc #: 65** ("Motion" or "). For the following reasons, the Motion is **DENIED**.

**I.**

On March 2, 2016, officers responded to a report of a drug overdose. An investigation revealed that two females gathered $20 and went to a residence where they knew they could obtain heroin. They made the purchases and returned to their residence. One of the females, S.C., utilized a needle to inject some of the heroin and overdosed. The other female, J.K., tried to revive S.C. and then called 911 for emergency help. NARCAN (also known as naloxone) was administered to S.C. who quickly regained consciousness, after which she was transported to a hospital. Her urine screen tested positive for cocaine and cannabanoids. The Elyria Police Department (EPD) tested what was left of the drugs on the spoon and in the syringe which proved positive for fentanyl. The EPD learned that the drug used by the females was purchased from Defendant Jesus Cruz. Later that day, J.K. agreed to purchase $40 worth of heroin from

Cruz. This controlled buy was caught on videotape. The drug was later tested and proved positive for fentanyl. The next day, J.K. agreed to purchase another $40 worth of heroin from Cruz. This controlled buy was also memorialized on videotape, and the drug tested positive for fentanyl. Based on this evidence, the EPD obtained a warrant to search Cruz's residence, and did so on March 4, 2016. Cruz assisted law enforcement with the location of a gun, a bullet and drugs including over 20 grams of heroin that also tested positive for fentanyl. At that time, after waiving his Miranda rights, Cruz admitted in an audio recording that the apartment was his, and the drugs, gun and bullet found therein were his. He also admitted that he made his living selling heroin to 8 to 10 customers a day.

On August 17, 2016, Cruz was named in a six-count indictment. Count 1 charged Cruz with distribution of fentanyl on March 2, 2016 with a serious bodily injury enhancement (the overdose) in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Counts 2 and 3 charged Cruz with distribution of fentanyl on March 2 and 3, 2016 (the controlled buys) in violation of 21 U.S.C. §§ 841(a)(1) and(b)(1)(C). Counts 4 and 5 charged Cruz with possession with the intent to distribute two quantities, approximately 6 grams and 20 grams, respectively, of heroin on March 4, 2016, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (both of which contained fentanyl). Count 6 charged Cruz with possession of a firearm by a felon on March 4, 2016 in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2).

On October 6, 2017, Cruz pled guilty without a plea agreement to Counts 4, 5 and 6. These Counts involved what the EPD found in Cruz's residence during the search on March 4, 2016. On November 14, 2017, Cruz pled guilty without a plea agreement to Counts 1, 2 and 3, with the exception of the serious bodily injury enhancement to Count 1. These Counts included

the pre-search charges, i.e., the sale of drugs to the two women on March 2, 2016 (which resulted in S.C.'s overdose), and the two controlled buys.

On November 16, 2017, Cruz entered a guilty plea to the statutory enhancement penalty related to Count 1 pursuant to a Rule 11(c)(1)(C) Plea Agreement. Doc #: 54. Therein, Cruz acknowledged that, if he exercised his constitutional right to go to trial, the United States would have to prove that his distribution of fentanyl on March 2, 2016, resulted in serious bodily injury to the overdose victim and was the but-for cause of her injury. *Id.* ¶ 8. He acknowledged that his guilty plea to the statutory enhancement would otherwise require the Court to sentence him to a mandatory minimum prison sentence of 20 years. *Id.* ¶ 2. Pursuant to Rule 11(c)(1)(C) and after considering the sentencing factors articulated in 18 U.S.C. § 3553(A), the parties agreed that the appropriate disposition of this case was for Cruz to receive a sentence of 8 years imprisonment relative to all 6 Counts of the Indictment, including the statutory enhancement. *Id.* ¶ 11. Cruz also acknowledged that the Court could accept the Plea Agreement, reject it, or defer a decision until the Court reviewed the Presentence Report. *Id.* Cruz expressly agreed to the factual basis for the sentencing enhancement, i.e., that he knowingly sold a mixture or substance containing a detectable amount of fentanyl on March 2, 2016 to a woman who ingested the substance causing her to overdose, a serious bodily injury. *Id.* ¶ 18(a). More importantly, Cruz expressly stated that he discussed the case and the plea agreement in detail with his attorney who advised him of his Constitutional and other trial and appeal rights, the nature of the charges, the elements of the offenses the United States would have to approve at trial, possible defenses, the advisory Sentencing Guidelines, etc. Doc #: 54 ¶ 24. He stated that he was satisfied with the legal services and advice provided to him by Attorney Serrat. *Id.* Cruz concluded that the Plea Agreement was the entire agreement between himself and the Government, no other promises or

inducements were made, and no one coerced or forced him to do anything in connection with this case, including his decision to enter a guilty plea. *Id.* ¶ 25. On February 7, 2018, the Court accepted the Plea Agreement and sentenced Cruz to 8 years imprisonment.

In the § 2255 motion Cruz filed on February 11, 2019, Cruz contends that Attorney Serrat was constitutionally ineffective for failing to file "motions." Doc #: 65. He contends that Attorney Serrat was constitutionally ineffective for failing to challenge in a motion to suppress the "fake" search warrant supporting the EPD's search of his residence, for failing to challenge the toxicology report that showed only the presence of cocaine and cannabanoids in S.C.'s urine screen, and for allowing Cruz to plead guilty to crimes of which he was factually innocent. On February 20, 2019, Cruz filed a Motion to Amend his Petition that is intended to supplement and relate back to the contentions he made in his § 2255 motion. **Doc #: 66**. The Court hereby **GRANTS** the motion.

**II.**

Under 28 U.S.C. § 2255, a district court may grant relief to a prisoner in federal custody under a sentence imposed by that court "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." *Id.*

Rule 4(b) of the Rules Governing Section 2255 Proceedings requires the judge to whom a § 2555 petition is assigned to promptly examine the petition. Rule 4(b) provides in pertinent part as follows:

> If it plainly appears from the face of the motion, and any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file

an answer, motion, or other response within a fixed time, or to take other action
the judge may order.

*Id.* The Court has promptly examined the § 2255 Petition, the record in the underlying criminal case, and the case law and finds that it plainly appears that Jesus Cruz is not entitled to relief in the district court for the following reasons.

### III.[1]

In order to succeed on an ineffective assistance of counsel claim, Cruz must demonstrate that (1) counsel's representation fell below an objective standard of reasonableness *and* (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984) (emphases added). Furthermore, if it is easier for the Court "to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 670. To establish prejudice on a § 2255 motion, Cruz must show a reasonable probability that, but for his counsel's errors, his sentence would have been different. *Id.* at 694.

To begin, as best the Court can interpret, Cruz argues that Attorney Serrat was constitutionally ineffective for failing to file a motion to suppress or challenge the toxicology report from the victim's hospital stay that showed the presence of cocaine and cannabanoids in her system. Doc #: 65-1 at 4, 13. There are several problems with this argument.

First, this is not the type of evidence a criminal defendant may move a Court to *suppress*, as it is not the product of an alleged unconstitutional search by law enforcement–it is a medical

---

[1] Judgment was entered against Cruz on February 8, 2018. Doc #: 62. Pursuant to 28 U.S.C. § 2255, the one-year limitations period for Cruz to file the § 2255 Motion was February 8, 2019. The Motion was filed three days later, on February 11, 2019. However, Cruz declared under penalty of perjury that he placed the Motion in the prison mailing system on February 5, 2019. Thus, the prison mailroom filing rule of *Houston v. Lack*, 487 U.S. 266, 270-72 (1988) applies and the Court finds that Cruz timely filed his Motion.

test routinely performed by the medical facility.

Second, the urine screen does not test for opium/morphine derivatives. Neither cocaine nor cannabanoids is an opiate/morphine derivative, which is why cocaine and cannabanoids showed up on the screening and not the fentanyl.

Third, the victim regained consciousness after having been given NARCAN by the first responders. NARCAN is a medication that can reverse the effects of opioids alone. It does not counter the effects of other drugs such as cocaine and cannabanoids.

Fourth, Attorney Serrat successfully moved the Court to retain an expert on medical forensics and was ready to proceed to trial with that expert. That said, Cruz's expert noted that the spoon and syringe seized at the scene that were reportedly used for S.C.'s injection were tested, revealing that the spoon contained cocaine and the *syringe* contained mostly cocaine and phenacetin, *with residue of fentanyl*. Doc #: 66-2 at 2. The expert observed that "[t]he combination of cocaine and strong opioids is recognized to be particularly dangerous, so the contribution of the cocaine cannot be arbitrarily ignored." *Id*. However, although no test showed that S.C. took fentanyl, "even the salutory effect of naloxone administration *permits the inference that she was, at least in part, under the influence of some opioid at the time . . .*." *Id*. at 3. The fact that the NARCAN revived S.C., the evidence that later that day and the next day, J.K. purchased heroin from Cruz that tested positive for fentanyl, and the fact that fentanyl was found in the syringe she used strongly suggests that Cruz sold fentanyl to S.C. and that it was the fentanyl that caused her overdose. Furthermore, Cruz admitted to the officers searching his house that he sold heroin and tests showed that the heroin found in his residence contained fentanyl. Thus, while Cruz contends that his attorney was constitutionally ineffective, a review

of the evidence against Cruz shows that Attorney Serrat did an exemplary job of negotiating an 8-year sentence in Cruz's plea agreement.

Next, as best the Court can decipher, Cruz argues that Attorney Serrat was constitutionally ineffective for failing to file a motion to suppress the fruits of the March 4, 2016 search which, he claims, "would have extinguished the case as a whole." Memo. at 4-5, 10-13. This argument also fails.

First, Cruz has not identified any defects in the affidavit in support of the search warrant or the search warrant itself, and the Court sees none.

Second, the evidence supporting Counts 1, 2 and 3 (two controlled buys of heroin with fentanyl on videotape and witness testimony) alone provided probable cause to search Cruz's residence.

Third, even if Attorney Serrat had successfully filed a motion to suppress the evidence found in Cruz's apartment based on an invalid search warrant, the evidence supporting Counts 1 (with the enhancement), 2 and 3 was obtained independently from the search of Cruz's residence. Thus, whether the search warrant was valid or not would not change the 20-year mandatory minimum Cruz faced if a jury convicted him of Counts 1-3 with the enhancement. He pled guilty to Counts 1-3 without a plea agreement and admitted in his Rule 11(c)(1)(C) Plea Agreement that he sold a mixture or substance containing a detectable amount of fentanyl to S.C. that caused her overdose.

As a last resort, Cruz delves into an extensive discussion about the "testimony" of S.C. and J.K. and their lack of credibility which, purportedly, show that he is factually innocent of the crimes he admitted committing–and that Attorney Serrat was ineffective for allowing him to enter a guilty plea. Nothing either woman said in various interviews, whether consistent or not,

can change the undisputed facts that (1) Cruz admitted he was a heroin dealer, (2) the syringe S.C. used to inject the heroin he sold her contained fentanyl, (3) the NARCAN administered to S.C. revived her, (4) the heroin he sold to J.K. in a controlled buy on the same day that S.C. overdosed contained fentanyl, (5) the heroin he sold to J.K. in a controlled buy the next day contained fentanyl, and (6) the 26 grams of heroin found in Cruz's house during a search contained fentanyl.. It may be true that Cruz did not know that the heroin he sold to his customers contained fentanyl,[2] but that does not change the fact that he admitted that he knowingly distributed "a controlled substance" to S.C. and J.K., whether or not he knew precisely what controlled substance he was selling. *McFadden v. United States*, 135 S.Ct. 2298, 2303-04 (2015).

It is also worth noting that Cruz filed several motions to disqualify his initial counsel, Attorney Russell S. Bensing, Doc ##: 14, 16, 18, before the Court appointed Attorney Serrat to represent him on February 14, 2017. At the February 14 hearing, Attorney Bensing stated that he told Cruz that his chances of acquittal on the sentencing enhancement was minimal and he was likely to be convicted. Attorney Bensing stated that he told Cruz that at best, he would serve 10 years in prison because he had no defense to the two controlled buys, the two possession counts and the felon-in-possession count; and at worst, he would serve life in prison without parole [due to an 851 sentencing enhancement the government would file based on a prior drug trafficking conviction]. Attorney Bensing also stated that he told Cruz that he could probably

---

[2]Apparently, even drug dealers are in the dark when they purchase heroin today. "There's a reason heroin mixed with fentanyl is becoming more common on the black market. That's because fentanyl is cheaper than heroin and more potent, so when it's mixed with heroin, manufacturers can get more profitability from a batch." See https://www.therecoveryvillage.com/fentanyl-addiction/related-topics/heroin-mixed-with-fentanyl/#gref.

negotiate a plea bargain with the Government wherein Cruz would be sentenced to 11 to 12 years, but all that said, he would try the case if Cruz so directed. Cruz stated that, if the Court would appoint another counsel ro represent him, and the new counsel said the same thing as Attorney Bensing, he would accept that advice. Although the Court expressly concluded that Attorney Bensing had provided fully competent advice to Cruz, it decided to appoint another attorney so that Cruz's decision whether or not to go to trial was a fully informed one. The Court appointed Attorney Serrat who managed to negotiate an 8-year sentence in a Rule 11(c)(1)(C) Plea Agreement which, under the circumstances, the Court considers a gift..

**IV.**

Based on the foregoing, the Court **DENIES** the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct the Sentence by a Person in Federal Custody. **Doc #: 65**

**IT IS SO ORDERED.**

   *Dan A. Polster     March 6, 2019*
**Dan Aaron Polster**
**United States District Judge**